18-7037 Henry Oviedo v. Washington M.A.A. v. Scarborough v. A.P.R.I. v. C.O.A.L.D. I'm Thomas Birch from the University of Georgia Appellate Clinic appointed by the court as amicus on behalf of Mr. Oviedo. Today one of our third year students Joe Scarborough who will argue on our behalf and I'll be sitting at counsel table. Thank you very much your honors. Good morning your honors and may it please the court. My name is Joe Scarborough as amicus on behalf of Henry Oviedo. This court should reverse the district court's grant of summary judgment because it is inconsistent with Occo v. Washington Hospital Center for two reasons. First, the district court failed to explain why Mr. Oviedo's rebuttal evidence was insufficient to survive summary judgment. Second, had the district court considered Mr. Oviedo's rebuttal evidence, it would have seen that Mr. Thomas' explanation for not interviewing him lacked credence. Your honors, WMATA takes the position that someone with over 30 years of experience in the transportation industry did not even deserve an interview. Initially, WMATA explained that Mr. Oviedo did not... Why should we care what the district court said? This is on summary judgment, correct? Appeal from summary judgment? Yes. And our review is de novo. That's number one, which means that we don't owe any deference whatsoever to the district court. The second thing is that district courts aren't required to say a word when they issue summary judgment. They don't have to write opinions. They don't have to give an explanation. There's nothing in the Federal Rules of Civil Procedure that requires that. So why does it matter what the district court said? Your honor, we're looking at whether or not the district court properly analyzed Mr. Oviedo's rebuttal evidence in light of the explanation that WMATA gave. And as to whether or not they have to explain what they considered, this court instructed in ACCA that when district courts analyze the plaintiff's rebuttal evidence, it's not enough to just hold that they didn't submit additional evidence of discrimination. This court gave an example and cited Hidalgo as an example of where the First Circuit did not apply the correct analysis. This court criticized the First Circuit for both failing to address the significance of the plaintiff's rebuttal evidence and for it failing to explain why it fell short. In fact, the Hidalgo court's reasoning that the plaintiff had offered no evidence that could reasonably be construed to indicate the employer intended to discriminate is the same reasoning, almost verbatim, as the district court's here today. Initially, the district court explained that it did not interview Mr. Oviedo because he lacked familiarity with WMATA's business policies, practices, and procedures. However, Mr. Oviedo submitted rebuttal evidence that he had significantly more experience than at least one of the higher candidates. Now, would you agree that in ACCA, the in-bank court looked at the record itself and made findings and determinations as to whether or not summary judgment was appropriate? Yes. The court there compared the candidate's qualifications and determined that a reasonable jury could find that the candidate was significantly more qualified and, therefore, infer discrimination. So, having criticized the First Circuit, this court went ahead and made its own determination on the record that was before it. Correct? Yes. Go ahead. And here today, if this court compares the candidate's qualifications, it would find that Mr. Oviedo is significantly more qualified. How are we to do that? How are we to know what qualifications are necessary or required for these two positions, or I guess for this position, this project management position? Well, in the record is the job description. Is it? I mean, there is a job description at JA 137 and 139, I think it is, a new site, but it's a job description from 2010, and there's no declaration, no deposition testimony, nothing that says that that is the job description that applied to this position. Well, Mr. Oviedo gave that job description to Mr. Thomas during his deposition. He also attached it as an exhibit to his response to motion for summary judgment. He gave it to him, and he said he didn't know whether that was the right job description or not. That was his testimony at the deposition. Yes, but before the district court, WMATA never objected to the job description. If it would have, Mr. Oviedo could have at that time submitted additional evidence connecting that job description to the two project manager positions. But the burden is on Mr. Oviedo to establish pretext overall, right? And so if his argument is that he's significantly more qualified, then he's got to put in evidence of what his qualifications are, what the other candidates' qualifications are, and what the qualifications are that were required for the position. Isn't that his responsibility? Yes. And well, don't concede that too quickly. What Judge Wilson said is that the plaintiff in a comparative qualifications claim has to put in the evidence of all the other applicants to make his claim. What your client did was to compare his qualifications to the person who was actually selected for the job. Yes. Mr. Oviedo. And why is that not sufficient under our law? It is sufficient. Your Honor, if we look at ACCA or Lathram, you can see that while a reasonable jury doesn't always have to defer to the employer's case, especially in a close call, if a reasonable jury can compare the qualifications to the person who was selected for the job, it's not sufficient. If a reasonable jury can compare the qualifications and find that one of the candidates was significantly more qualified, then a reasonable jury can infer discrimination. If a reasonable jury was always required to defer to the employer, then no job discrimination case could ever go to trial. So is your response to Judge Wilkins, then, that that may be true as to the ultimate burden at trial, but at summary judgment, the plaintiff's burden is somewhat lessened in the sense that he doesn't necessarily have to show he would prevail, but simply that there was enough that a reasonable jury could find. And indeed, we have a case that basically says that, and I'll mispronounce it because it's like Soskowsky, all right? I know Judge Henderson and I were on the panel. I don't remember who the third judge was, but that's from this circuit. We sent it back to the district court. It went to trial and the plaintiff lost. But as far as we were concerned in terms of what was here, there was enough at this point to show summary judgment was inappropriate. On the other hand, Judge Wilkins may come back and say, yes, but we have a lot of cases saying that at summary judgment, the ultimate burden is on the plaintiff and basically has to show he's entitled to judgment as a matter of law. Yes, Your Honor. But if we agree with all of that, and if you view the facts in the light most favorable to Mr. Oviedo, there's at least a jury question as to whether he was significantly more qualified and will not have acted with discriminatory intent. I guess the question that I would ask is a more narrow question is, if the district court has a declaration in front of it from the decision maker about why he made the decision and what the qualifications were that were pertinent to him, and there is no other evidence that's been put in that the district court has to evaluate whether or not the qualifications that the decision maker said he was looking for were the qualifications, what's the district court to do? Well, the declaration that WMATA attached to his motion for summary judgment is the first time that there's any mention of these being specialized positions for canopy installation or financial management. Nowhere in the 2014 memo that John Thomas wrote right after he made the decision, nowhere during John Thomas's deposition, and nowhere in the job description is there any mention of these being specialized positions for canopy installation and financial management. But again, you're assuming that there's a job description in evidence. There isn't. Your Honor, the job description was submitted to the district court, and WMATA never objected to it. If it had of, Mr. Oviedo could have tied it more closely to the positions in question. However, without WMATA ever objecting to this job description and Mr. Oviedo referencing it multiple times, the job description was submitted as rebuttal evidence that the district court should have considered. But even without the job description, if you look at WMATA's initial explanation in the 2014 memo that Mr. Oviedo lacked familiarity with WMATA's business policies, practices, and procedures, it's difficult to see how having worked there for 14 years, he didn't overcome this hurdle. This is especially when you compare his qualifications to those of the higher candidate, Ms. Levy. Well, let's do that. She had a master's degree in project management, right? Yes. He didn't. Yes. Right? And she was certified as a project management professional, right? Yes. She wasn't. She managed a budget of $100 million. He didn't. So how's a jury to say maybe he was a little bit more qualified, maybe he wasn't? But under ACCA, when you've got nuances like that and small differences between the candidates, the court said in ACCA that they're not going to micromanage or make a decision itself, that it's up to the people that are running whatever the company is. Well, we feel there is still a significant gap. If you look at WMATA's initial explanation for his decision. Just to round it off, I mean, when you go through the qualifications, the point is that it's, and district courts said this, that you cannot infer from the differences between them that the reason that he was not selected is lawful discrimination. That's all. Well, there are a number of other attributes in both of their resumes that show that Mr. Jovieto is significantly more qualified. He has over 30 years of experience in the transportation industry. Ms. Levy, before working at WMATA, had never worked at a transportation company, meaning she had less than two years of experience in the transportation industry. Further, the job description said a preference for someone with a minimum of eight years experience in the transportation industry. You're again assuming that we have to credit that. I mean, Mr. Oviedo did not submit a statement to counter the WMATA statement of undisputed facts, right? Yes. And he didn't submit his own kind of statement of material facts that he believed were in dispute under our local rules, right? Yes. So, I mean, I guess the question that I have is the challenge for the district court is it has to make a ruling based on evidence or material that's been proffered as evidence. And this whole case hinges on a job description that's from the wrong year, and there's no one, even in the declaration, saying that this is the right job description. Well, just looking at WMATA's initial explanation, this will answer your question as well as yours as to the significant gap in qualifications. WMATA said that Mr. Oviedo lacked sufficient familiarity with their business practices, policies, and procedures. And they hired someone who had worked there for less than two years instead of Mr. Oviedo who had worked there for over 14. This gap is difficult to see how Ms. Levy, having only worked there for two years, overcame the gap or overcame this hurdle of being familiar with WMATA's business practices, policies, and procedures where Mr. Oviedo failed. Further, Mr. Oviedo was well-qualified for these positions. He had a Bachelor of Science in Electrical Systems from State University of Chile, an MBA in Finance from St. Joseph's, and a Master's of Science in Systems Engineering from the University of Pennsylvania. He had over 30 years of experience in the transportation industry where he oversaw multimillion-dollar grants, managed and adjusted budgets, and was responsible for supervising contractors, consultants, and engineers. At WMATA, he had been a senior project manager on seven major projects where he managed cost schedules, replaced major electrical and mechanical equipment, and ensured that projects were completed on time and under budget. Further, WMATA's explanation shifted over time. WMATA initially explained that Mr. Oviedo lacked familiarity with his business policies and procedures and that that was why he wasn't interviewed. Later, in its motion for summary judgment, for the first time, WMATA explained that these were specialized positions for canopy installation and financial management. This shifting explanation could allow a court to find pretext. Finally, Your Honors, WMATA misstated Mr. Oviedo's qualifications. It said that Mr. Oviedo was not fit to work in these specialized positions for financial management or canopy installation. However, given that he has served as a project manager for over 30 years, was in charge of all construction at his previous job at SEPTA, and then it asserts that he was not capable of installing canopies is a misstatement of his qualifications that's too obvious to be unintentional. Suppose the reason that appears for his not being hired was because he was too old. Suppose that's the reason. But WMATA is immune from age discrimination cases or claims. What do we do then? Well, Your Honor, the problem there is that WMATA never explained. That wasn't the reason that WMATA gave. They didn't say that he didn't hire him. I realize that. If you take a look and it's sort of even between Ms. Levy and the plaintiff in this case, and the only explanation is that he was much older than she was. What do we do then, since WMATA is immune from age discrimination? Well, that would be a different situation. I realize that. That's why I'm asking the question. In that case, since Mr. Oviedo didn't raise age discrimination, if WMATA had said we're not hiring Mr. Oviedo because he's too old, I'm sure at that point he would have raged at age discrimination, but it never said that, and he never raised that issue before the district court. And so we wouldn't argue on that ground. However, because that's not what they said. I thought he did raise a claim of age discrimination. Well, it wasn't. He did, but then they have immunity, and so it's not being argued here today. Okay. Thank you. If Your Honor does not have any further questions. Yes, why don't you, we'll give you a couple of minutes in rebuttal. Yes. Good morning, and may it please the Court. My name is Richard Cole, and I represent the Washington Metropolitan Area Transit Authority, which I'll refer to probably interchangeably as WMATA or Metro throughout the argument today. The district court correctly decided that Mr. Oviedo failed to put forth sufficient evidence based on the record before it with respect to two Title VII claims of racial discrimination stemming from his non-selection to two project manager roles in November 2013 in Metro's Office of Major Capital Projects. As a housekeeping matter, Mr. Oviedo and the amicus submitted materials for the first time to this court, Joint Appendix pages 257 to 71, and this court does not have a fact-finding function. These were not part of the record below, and in the amicus reply brief, they limited their arguments to solely the record before the district court. So we consider the matter conceded, and we won't discuss those documents in the course of today's argument unless you guys have specific questions. We guys don't have any particular questions. I'm sorry? We guys don't have any particular questions as to non-record evidence, although I can think of a couple, but we won't get there. Okay. So as a threshold issue, we must discuss the materials that were submitted at the summary judgment stage as, quote, rebuttal evidence before we can even begin an analysis of the candidate's qualifications compared to what the objective standards that WMATA was looking for to fill the roles. So certainly ACCA states that plaintiffs are not presumptively required to submit evidence over and above rebutting the employer's stated explanation to overcome summary judgment. But the ultimate burden of proof to show intentional discrimination remains with the plaintiff. That's Wheeler v. Georgetown University Hospital Center. So do you agree Mr. Thomas' initial statement was that the plaintiff's experience was too technical for the positions of project manager that were announced in 2009? That's a yes or no. Yes. It is a yes or no. I do agree that the — That's your answer, yes or no. Yes. All right. That is what Mr. Thomas said, correct? Consistently. Not only in that memo, but in deposition. Well, he said it the first time. That's what he said. There was no mention about canopies or financial, et cetera, right? You're right. Your argument is that a project manager necessarily involves those types of skills and talent? My argument is taken from, partially, Jackson v. Gonzales. The fact that an employer based its ultimate hiring decision on one or more specific factors, encompassed with a broader and more general job description, does not itself raise an inference of discrimination sufficient to overcome summary judgment. And what about our in-bank decision in ACCA? So, in ACCA, and again, before we can get to ACCA, I think we have to assume that Job Code 2854 actually relates to the job description that was filled. Well, let me ask you about that. A plaintiff sues WMATA. Yes. And he says that in 2009, there were two project manager positions announced. And he gives that four-letter number as the code. All right? Where does WMATA say that's not the job description? Mr. Thomas says he doesn't know, but that's a different issue. Well, so in 2013, he applied for two jobs. It's unclear because we never had the opportunity. He never asked it directly, open-ended, to the hiring manager, what were your job descriptions when you were filling this role. No, but I don't understand. If I sue a defendant and I say I wasn't hired for this project manager job, and I say I'm totally qualified, and you say, well, no, that project manager job isn't like the project manager jobs you previously held. This is all about canopies and financial management. This record is not very developed. We've never had a 30 v. 6 deposition. Well, you're asking for judgment as a matter of law. Right, based on the insufficiency of the rebuttal evidence provided by the plaintiff. We have a statement from the hiring manager by affidavit and deposition testimony. He doesn't know. So who gets the benefit of that information? It's 2017 when he was deposed, about a 2013 job position, and we have 13,000 employees. With all due respect, counsel, you put him on as your witness. You filed the motion for summary judgment. Correct. And that's the position you took. But all I'm getting at, who gets the inference? When Thomas doesn't say it isn't the job description, he's just saying he doesn't know. Sure. And even if this court were to assume that this document was capable of being converted to admissible evidence, which is a standard in opposing summary judgment from Greer v. Paulson, and sheer hearsay counts for nothing, even if we can, it's not whether or not WMATA didn't object. It's whether the document is capable of being converted to admissible evidence. I don't think the factual predicate is there. But that said, I would like to look at the document. Can I ask you, though, on that? Sure. That's going to be your argument. What did the plaintiff have to do? Did the plaintiff have to bring in a WMATA employee to say this was the job description? I think he could have made a statement, a sworn statement by affidavit. I think he could have even made it. By saying what? That this job description matched the one that I applied for. That statement is not on the record. Isn't that the inference of his submitting it? There's no suggestion that he is manufacturing or misrepresenting what he understood. Respectfully, we have to guess. We don't have to guess. On summary judgment, the Supreme Court has said there's no guessing at this point. There's no weighing of credibility. There are three job descriptions submitted in opposition to summary judgment. One is a 2006 job position for a manager of engineering. One is a 2009 job description of a construction inspector. And one is this 2010 job description that Judge Wilkins identified in opening argument. And so we're assuming that this is the one that was used because Mr. Oviedo said so himself in deposition with Mr. Thomas. And I'm fine with that because I think even if we assume that this is the job description used, the summary of the job description states that they're looking to fill a role who could perform projects on time within budget. Specific responsibilities include planning, scheduling, budget management, developing and maintaining schedules and budgets. What page is that on? That's JA-137, Your Honor. The project manager is also responsible for identifying scheduling and cost variances and then implementing recommendations to correct the negative variances. And what evidence is there that in the seven project manager jobs he previously held for WMATA he didn't do all these things? There isn't any evidence that those projects were never successfully completed? I don't believe WMATA ever stated that Mr. Oviedo was not qualified for this job. I think that's a distinction that's important and material here. We are saying that the selected candidate. Well, you're fighting about, as I am arguing about, what is the job? We have no idea is your argument because we don't know what the job description is. I'm saying that this court has to credit Mr. Thomas' statement and affidavit. That he doesn't know. In his affidavit he stated the specific nature of the project management roles that he was trying to fill. Ms. Levy specifically worked in his department, worked underneath him and demonstrated the experience. Did she as a project manager? I think she was promoted into a project manager role. I see that counsel candidly. Let me say, I'm going to be clear here. WMATA could well prevail, all right, ultimately. I understand. The only question is on summary judgment. And we have this moving target about this job and what was required. Right. And that's what ACCA said is sufficient. ACCA and Latham both say that there has to be a wide and inexplicable gulf in qualifications. And in Latham, the person hired had no experience in public affairs or public relations. Over somebody who was working as a public affairs specialist for three years. So your position is no reasonable jury could find that somebody who'd worked for WMATA two years compared to somebody who's been there, what is it, 19 years? He certainly. Done all these major, major projects. As an electrical engineer, correct. He's been the project manager. Right. WMATA never denied that. That term in of itself doesn't carry much meaning. You know, it could be there's multiple departments. But you just told us that they described what it meant. Well, in this instance, there's a job code from 2010 that describes the duties of a project manager as used by various departments, according to this document. The very fact that he worked as a project manager, however technical that was in electrical engineering or whatever, in several different capacities over a long period of time, tends to show that he was not being discriminated against. He got all those positions. And if there was discrimination at WMATA, how do you explain that? You can't. And so what you're left with is just simply a comparison of his qualifications with Ms. Levy's qualifications. And we've already ‑‑ I was already through that with Mr. Scarborough, that there are good points here and there are good points there. And given the history, it seems to me that you cannot infer, there was no direct evidence of discrimination, that you can't possibly infer discrimination as a reason for his not being hired. And I'd like to add, in the minimum qualifications section on, I believe, JA139, it says bachelor's degree in engineering and transportation for a related field. These are additional acceptable requirements. And a master's of science in project management would surely be a related field. Additionally, there's an equivalent combination of education and relevant work experience that will be considered as part of these minimum qualifications. And Ms. Levy met those standards. So how do you get around the minimum of eight years of experience as a project manager in the transportation industry? Well, that's exactly what I was saying. The second paragraph there in minimum qualifications says there's an equivalent combination of education and relevant work experience that will be considered if the candidate can meet these certain things. And she can and did. She worked within that department. She had direct fiscal responsibility over major construction projects. She did it under the supervision of the hiring manager. So he observed these. This is not subjective criteria like somebody interviewed strongly. This is somebody who demonstrated the capability of performing adequately in their role. And so in that sense, it's not like the Ockett case where there was 19 years of experience as a hospital orderly who filled prescriptions or delivered prescriptions and was familiar with the pharmacy versus a person who met one year in the laundry and only volunteered for two months in the pharmacy. I mean, that's a wide, inexplicable gulf of experiences that I don't think applies here. Further. Can I just ask you about this equivalent combination of education and work experience? What in the selected person's background was eight years of relevant work experience? She had over nine years of experience in finance and construction and working on energy and transportation projects. And it was directly applicable to this role in the Office of Major Capital Projects. And so I believe that they viewed her education in combination with her experience to say that she met the minimum qualifications. And further, I'd like to go on to talk about the alleged misstatements regarding qualifications of Mr. Oviedo. In the misstatements that I believe are actionable as that could be inferences of discrimination are more like definitive statements that could be provably false. In Ockett, the example is given that the employer said the candidate does not speak Portuguese, but the candidate does speak the language and the employer knew it. In Latham v. Snow, one of the examples is that the government said it could not promote somebody from GS-13 to GS-15. But there was a personnel exception where they could. And so that was something that was a misstatement about why they didn't select them. I don't believe that that's the situation here. I think the situation is much more similar to Holcomb, where she said, oh, they're misstating my qualifications. She said that the candidate selected had a better breadth of understanding of OEO complaints. And she said, well, two years ago I had a positive performance review about my processing of OEO complaints. And the court determined, look, this is not an inconsistent statement. This is not something that is a contradiction. They never said Holcomb lacked experience or never processed EEO complaints. I think that's similar here. We're not saying Mr. Oviedo lacked key experience in submitting costs for approval or budgets or keeping a project on time. We're just saying that the candidate selected had a better breadth of understanding for the type of work within the Office of Major Capital Projects for the project manager position that she was selected for. And, again, I don't believe our explanation shifted over time. In Galletta v. Gray, you had an employer at the time of the incident, at the time of the transfer, they said, oh, you pick a reason why we're transferring you. And then in interrogatories they said some new reason. And then on brief, they had a third reason about insubordination. That's not been the case here. I believe if you read the 2014 memo that was close to contemporaneous with the decision from John Thomas, that he was saying that Mr. Oviedo's experience was narrowly focused. And he expanded on it in affidavit. It appears for the first time because the record wasn't developed. He wasn't asked directly, what were your objective job qualifications that you were filling these roles for? He wasn't asked that. If you read the deposition testimony, there was direct questions about, you know, why wasn't I qualified? It wasn't an attorney asking the questions. So he didn't have the opportunity to provide those answers. So for those reasons, we believe that the rebuttal evidence in the record before the district court alone is not sufficient to overcome summary judgment and the matter should be deferred. Your Honors, even if you only consider one piece of evidence in this record, and that is Mr. Oviedo's resume, and you look at WMATA's explanation that he was not fit because these jobs were specialized positions for canopy installation. Solely based on that, WMATA is misstating his qualifications. Mr. Oviedo's resume shows over 30 years of experience in the transportation industry, where he has been in charge of all construction and managed major construction projects and project manager projects at various rail stations. So what about Judge Randolph's point? He was selected to be the project manager on these major projects. Your Honor, all of these projects were within the same position. He held the same position while he was working as the project manager on these different projects. He applied for 12 new positions and never received any of them. And so that's where you can see the discrimination. And this position that's at issue, did it pay more or was it at a higher grade than the position that he was working in? Yes. What was the difference in pay? I'm not sure of the exact numbers. His testimony was that he expected, even though it was a lateral move, what had happened in the past was people who moved laterally got a pay increase. That's all we have. I don't think there's any evidence of a difference in pay grade, at least I didn't see. Can you point to something in the joint appendix that gives us that information? Your Honor, off the top of my head, I can't give you an exact reference from the joint appendix indicating that there was a definite pay increase. However, we can submit it. I've got any reference. It doesn't have to be exact. Your Honor, as I recall, this position did include a pay increase. And that is why Mr. Avedo was applying for it, is he was seeking this new position, which included a pay increase. And he had applied for 12 previous positions and not received any of them. And again, Your Honors, if you look at his resume, for WMATA to say that he was not fit to install canopies when he's building a new building, that he built entire substations and been responsible for the construction there, is a gross misstatement of his qualifications. Further, as to the job description, WMATA, in the reply brief, never denied that this was the job description. In his response to Motion for Summary Judgment, he alleged that WMATA never raised that these were specialized positions for canopy installation in the job description. The other things that the job description says, opposing counsel points out that Ms. Levy had been progressively responsible in nine years of financial management to satisfy the eight-year minimum requirement. However, the job description explicitly says a minimum of eight years working in the transportation industry. Well, Ms. Levy might have had this progressively responsible financial experience. She had never worked at a transportation company before she worked at WMATA, and she had worked at WMATA for less than two years. So you don't think that there could be an equivalency for the transportation industry requirement, like there could be an equivalency for anything else in the job description? Your Honor, Ms. Levy has never worked at a transportation company. She does have some progressively responsible financial management experience, but not in the transportation industry. Mr. Rivieretto, on the other hand, has over 30 years of experience in the transportation industry. That 28-year gap is even larger. The evidence indicated his 30 years were spent in electrical engineering, and Mr. Thomas testified that that was a judgment call. As opposed to a broader focus dealing with budgets and large sums of money, which is what this involved and what Ms. Levy had experience with. That doesn't mean that your client or the plaintiff was not qualified, but it resolves into a judgment call in comparing him with the person who was hired. When WMATA asserts, or Mr. Thomas asserts, that Mr. Rivieretto only had a narrow experience in electrical, it's cherry-picking items from his resume, while ignoring others that show he had, while he did have a focus in that, he had a broad experience and certainly was qualified to handle this job. So is your argument that a reasonable fact-finder, viewing the evidence in the light most favorable to Mr. Rivieretto, could find that explanation in Mr. Thomas? Yes, Mr. Rivieretto had broad experience. He had more experience in project managing and the transportation industry than Ms. Levy. And, once again, if we only look at one piece of evidence, and that is Mr. Rivieretto's resume, with this broad, long transportation project manager experience, where he's built entire substations, the storage containers, elevators, all of that. And Mr. Rivieretto's resume, with Mr. Rivieretto's resume, where he's built entire substations, elevators, escalators, to assert that he was not qualified to build canopies, which Mr. Rivieretto himself asserted only requires the tightening of bolts and things of that nature, is a misstatement of his qualifications, too obvious to be unintentional. So this case comes to us on the basis that it was the failure to interview that was discriminatory. Not the failure to select him for the position. And that's a little different than some of the cases we get where someone says, I should have gotten the job. That's not your client's argument. And even in reply, you stick with the notion that it's the discrimination in not deciding to interview him. And that's all that's at issue here. Not who gets the job. Is that right? Well, Your Honor, the key is that if they don't interview him, then he can't get the job. No, but I understand your point, but counsel, that's why I looked at your reply brief, because I wanted to be sure you were sticking with it. The way you have framed it, it's a little different than some of these other cases where people say, I should have received the job because I'm much more qualified than the person who received it. That is not the argument we are presented with. Mrs. Levy may have degrees galore. She may have this financial experience. Mr. Thomas may think she's the greatest thing that's come along. But all Mr. This appellate is arguing is it was the failure to interview him that was discriminatory. Is that correct? I want to be very clear about that. And I understand your point about if you're not interviewed, you can't get the job. But this is not quite the qualifications type of job that some of our cases have addressed. We were actually comparing resumes. This is just the failure to interview him. That's your discriminatory claim, right? Your Honor, Mr. Oviedo, yes, was well qualified for these positions and at the least should have received an interview, especially compared with the candidates who did receive an interview. For Mr. Oviedo to have over 30 years of experience in the transportation industry and not even receive an interview for these positions, especially when opposing counsel, has even recognized in this argument that he was well qualified. But at the least, Mr. Oviedo deserved to receive an interview so that Mr. Thomas could further look and decide whether or not he was qualified. So suppose the agency has multiple applicants and they all have, let's just assume for the moment this is hypothetical, a lot of experience that's relevant to the project manager jobs that are at issue. And so Wamana decides, we're not going to interview all 20. We're just going to narrow it down. And it may well be, as Judge Randolph's question inquired, maybe they just decided your client was too old. I mean, he had a lot of experience, but too old. And they had all these other people who were younger and had relevant experience. So Wamana decided it wanted to focus on them. And those were the people it was going to interview. Can an inference of discrimination be based on that type of claim? The key there, Your Honor, would be Wamana explaining that that was the reason for their decision. All this boils down to is whether the explanation that Wamana gave, a reasonable jury could find that it was not the true reason or that it was false. And the reasons that Wamana gave in this case do not objectively make sense. Wamana didn't say that it didn't like him. It didn't say he was too old. It said that he wasn't qualified, that he wasn't able or fit to install canopies. And that assertion... Is the discrimination you're claiming racial? National origin. Because he's from Chile? Yes. So in this case, am I correct that the evidence that was put before the district court was that there were six or seven applicants and that Mr. Thomas interviewed all but two? I think that's what I'm seeing at JA-154. Please, sir. But we don't have evidence in the record about the relative qualifications of all of the people who were interviewed, or the other person besides Mr. Oviedo who was not interviewed. We just have a comparison between his qualifications and the person who was selected. Yes. Anything further? No, Your Honor. Thank you. Thank you. We'll take the cases under advisement. I do want to thank the amicus council of the Georgia Law School and Mr. Scarborough for their assistance to the court. Thank you.
judges: Rogers, Wilkins, Randolph